Fernando NESTORIO,

v.

**ASSOCIATES COMMERCIAL CORPORATION.**

**In re Fernando Nestorio.**

**No. CIV.A. DKC 99-3842.**

United States District Court,
D. Maryland.

May 22, 2000.

52

Robert H. Law, Robert H. Law, P.A., Bowie, MD, for debtor.

Steven N. Leitess and Aryeh E. Stein, Leitess, Leitess & Friedberg, Baltimore, MD, for appellee.

### MEMORANDUM OPINION

CHASANOW, District Judge.

This is an appeal from an Order of the bankruptcy court granting partial summary judgment in favor of Associates Commercial Corporation and against Fernando Nestorio ("Debtor") and, pursuant to 11 U.S.C. § 523(a)(6), excepting from discharge a judgment obtained by Associates against Debtor in the United States District Court for the District of Mary-

land. For the reasons set forth below, the court shall AFFIRM the Order of the bankruptcy court.[1]

## I. *Background*

Prior to the filing of Debtor's bankruptcy petition, Associates filed suit against Debtor and certain corporations owned and/or controlled by Debtor in the United States District Court for the District of Maryland (Case No. DKC 97–3422). The complaint alleged that Debtor had wrongfully converted, concealed and destroyed certain heavy construction equipment in which Associates had a security interest. Associates sought compensatory and punitive damages. The defendants failed to file responsive pleadings or otherwise appear in the action, and the Clerk of the Court entered an Order of Default against Debtor and the other defendants. The defendants then filed an answer along with a motion to set aside the default, which was granted on the condition that defendants post a bond in the amount of $100,-000. Defendants failed to post a bond. Thus, the Order of Default stood.

The case was then referred to a Magistrate Judge for a determination of damages prior to entry of judgment. A hearing was held on July 23, 1998, but was continued to a later date to permit supplemental briefing. Debtor was present and represented by counsel at the July 23 hearing. On October 2, 1998, before the damages hearing could resume, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On January 14, 1999, the bankruptcy court entered a consent order granting Associates relief from the automatic stay to proceed against Debtor in the district court litigation "for the purpose of determining the amount of Debtor's liability to Associates and the entry of final judgment in that amount." The next day, January 15, 1999, Associates filed a complaint in the bankruptcy case to determine the dischargeability of the judgment obtained by Associates in the district court litigation. The complaint alleged that the debt (the district court judgment) arose out of Debtor's willful and malicious injury to property in which Associates had a security interest, and was therefore excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

The damages hearing before the Magistrate Judge resumed on March 10, 1999, and concluded on March 12, 1999. Debtor and the other defendants failed to appear at the hearing.[2] Based on the evidence presented by Associates, the Magistrate Judge recommended that Associates be awarded $131,380.21 in compensatory damages. The Magistrate Judge also recommended that Associates be awarded $75,-539.76 in punitive damages after finding that Debtor acted with "malice and a deliberate intent to deprive [Associates] of possession of the Equipment." The district court adopted the Magistrate Judge's Report and Recommendation[3] and entered judgment in favor of Associates.

After the district court entered judgment, Associates moved for partial summary judgment in the bankruptcy court on

---

1. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Bankr. Rule 8012.

2. As noted above, Debtor was present and represented by counsel when the damages hearing commenced on July 23, 1998. Debtor's counsel filed a motion to withdraw his appearance on October 28, 1998, several weeks after the bankruptcy petition was filed. The motion was denied, and the damages hearing was rescheduled for March 10, 1999. By letter dated December 23, 1998, Debtor's counsel notified Debtor of the date on which the damages hearing would be continued. In February 1999, Debtor's counsel filed a second motion to withdraw, which was granted. The Order granting the motion to withdraw was mailed directly to Debtor. Debtor does not contest the adequacy of notice of the March 10, 1999 hearing.

3. Debtor did not file an objection to the Report and Recommendation.

its complaint to except the district court judgment from discharge. Associates argued that the doctrine of collateral estoppel precluded Debtor from litigating in the bankruptcy proceeding the issue of willful and malicious injury under § 523(a)(6) because the district court, in awarding punitive damages, determined that Debtor's conduct was willful and malicious. The bankruptcy court, applying the doctrine of collateral estoppel, granted Associates' motion for partial summary judgment and entered an order excepting the district court judgment from discharge. This appeal followed.

## II. *Analysis*

■ Debtor raises the following arguments on appeal: (1) the bankruptcy court erred when it relied on the district court's factual findings in connection with the award of punitive damages to preclude Debtor from litigating the issue of willful and malicious injury under § 523(a)(6), because the punitive damages issue exceeded the scope of the consent order lifting the stay and should not have been considered by the district court; (2) the requirements for invoking the doctrine of collateral estoppel were not satisfied; and (3) Debtor's Fifth Amendment right to due process was denied because the bankruptcy court did not exercise "particular care" in determining the applicability of collateral estoppel. This court reviews the bankruptcy court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Debtor and drawing all reasonable inferences in his favor. *American Bankers Ins. Co. v. Maness*, 101 F.3d 358, 362 (4th Cir.1996); *Fairfield v. United States (In re Ballard)*, 65 F.3d 367, 369 (4th Cir.1995).

### A. *Scope of the Order Lifting the Automatic Stay*

■ The Order lifting the automatic stay, which was entered by consent of the parties,[4] provided that "the automatic stay of 11 U.S.C. § 362(a) is terminated to allow Associates Commercial Corporation to proceed against Debtor in the litigation now pending in the United States District Court for the District of Maryland ... for the purpose of determining the amount of Debtor's liability to Associates and the entry of final judgment in that amount." The only limitation stated in the Order was that Associates "must receive additional relief from [the bankruptcy court] prior to any execution or enforcement of [the judgment entered in the district court]." Debtor contends that relief from the automatic stay was limited to a determination of compensatory damages by the district court and did not extend to any issue that might affect the dischargeability of the district court judgment (such as a finding of willful and malicious conduct in connection with a punitive damages award). Debtor relies on the following to establish the intended scope of the consent order: (1) the oral agreement of the parties' counsel "that lifting the stay would in no way affect the dischargeability of Associates' claims in Bankruptcy Court"; (2) Associates' motion for relief from the stay; (3) Debtor's bankruptcy counsel's transmittal letter giving consent for filing of the consent order; and (4) Associates' complaint in the bankruptcy court to determine the dischargeability of the district court judgment. Notably, Debtor does not rely on the language of the consent order itself to support his argument.

■ Consent orders are construed under ordinary contract law principles. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235–37, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). The primary function of the court when construing a contract is to ascertain the intention of the parties. 11 Samuel Williston, *Williston on Contracts* § 30:2, at 16 (4th ed.1999). When the language of a contract is plain and unambiguous on its face, the parties' intentions are determined from that language

4. Debtor was at all times represented by counsel in the bankruptcy proceeding.

without reference to extrinsic evidence. *Id.* § 31:4, at 277–78; *see United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971) ("[T]he scope of a consent decree must be discerned within its four corners."); *Robinson v. Vollert,* 602 F.2d 87, 92 (5th Cir. 1979) ("Consent orders are interpreted as contracts and are to be construed only by reference to the 'four corners' of the order itself. Reference to extrinsic evidence ... is permissible only if the order is ambiguous in some respect.").

Here, the language of the consent order was clear and unambiguous on its face. The consent order stated that the stay would be lifted to permit Associates to proceed in the district court litigation "for the purpose of determining the amount of Debtor's liability to Associates and the entry of final judgment in that amount." Determining the "amount of liability" includes determining the amount of punitive damages when, as here, the complaint requests punitive damages and alleges facts that, if true, would permit an award of punitive damages. There is nothing in the language of the consent order indicating an intent to limit the scope of the damages hearing to the issue of compensatory damages or to exclude issues that might affect the dischargeability of the judgment.[5] Thus, the court finds that the consent order lifting the stay did not preclude the district court from considering all issues relevant to a determination of damages, including punitive damages.

### B. *Application of Collateral Estoppel*

■ Debtor next argues that the requirements for application of collateral estoppel were not satisfied. "Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceed-

ing." *Hagan v. McNallen (In re McNallen),* 62 F.3d 619, 624 (4th Cir.1995). The principles of collateral estoppel apply in dischargeability proceedings in bankruptcy court. *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). When the prior judgment was rendered by a federal court, federal principles of collateral estoppel apply. *Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210, 214 (3d Cir.1997) (citing *Grogan,* 498 U.S. at 284, 111 S.Ct. 654; *Heiser v. Woodruff,* 327 U.S. 726, 732, 66 S.Ct. 853, 90 L.Ed. 970 (1946)).

■ Under federal principles of collateral estoppel, before a party will be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded was the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment. *Combs v. Richardson,* 838 F.2d 112, 115 (4th Cir.1988) (citing *In re Ross,* 602 F.2d 604, 607–08 (3d Cir.1979)). In this case, Debtor contends that requirements (2) and (4) were not met. Debtor also contends that certain procedural prerequisites to applying collateral estoppel were not met.

1. *The Issue of Whether Debtor Caused Willful and Malicious Injury was "Actually Litigated" in the District Court*

■ Debtor argues that the issue of whether he caused willful and malicious injury was not actually litigated because the district court judgment was obtained by default and Debtor was not present for the final three days of the damages hearing, and thus was unable to cross-examine witnesses and offer evidence in defense of the claim for damages. The prevailing view is that collateral estoppel does not apply to default judgments entered "with-

---

5. The court also notes that the extrinsic documentary evidence submitted by Debtor does not support Debtor's contention regarding the intended scope of the consent order.

out further inquiry upon failure to answer." 18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4442, at 375–76 (1981). This case, however, does not involve the typical default case where the defendant fails to answer or appear and judgment is entered in favor of plaintiff. Here, Defendant was an active participant in the litigation for some time prior to his decision not to appear for the conclusion of the damages hearing.

Most courts hold that the "actually litigated" requirement is met, even if there is no adversarial hearing, when (1) a defendant files an answer to the complaint or otherwise appears in the action, (2) the issues are submitted to a jury or finder of fact, (3) the issues are determined after the party has notice and an opportunity to be heard, and (4) the defendant had proper incentive to litigate the matter in the prior hearing and could reasonably foresee litigation on the same issue. *See Ramsey v. Bernstein (In re Bernstein),* 197 B.R. 475, 480–82 (Bankr.D.Md.1996); *Fincher v. Holt (In re Holt),* 173 B.R. 806, 811–16 (Bankr.M.D.Ga.1994); *Vaughn v. Quinn (In re Quinn),* 170 B.R. 1013, 1015–17 (Bankr.E.D.Mo.1994); *Goins v. Day (In re Day),* 137 B.R. 335, 337–40 (Bankr.W.D.Mo.1992); *Bishop v. Herwig (In re Herwig),* 77 B.R. 662, 664 (Bankr.S.D.Ill. 1987); *see also Katahn Assocs., Inc. v. Wien (In re Wien),* 155 B.R. 479, 485–86 (Bankr.N.D.Ill.1993); 18 Wright et al., *supra,* § 4442, at 376. In *Bernstein,* a creditor sought to preclude the debtor from litigating the issue of willful and malicious injury under § 523(a)(6) based on a prior judgment obtained against the debtor in state court. In the prior litigation, debtor answered the creditor's complaint, but failed to appear for trial. The state court proceeded to hear the case because the debtor had proper notice of the trial date. After the creditor introduced his evidence, a jury returned a verdict in favor of the

creditor for compensatory and punitive damages. The bankruptcy court held that collateral estoppel would preclude relitigation of the dischargeability issue because the debtor had answered the complaint, had the incentive to litigate, was faced with the foreseeable binding effect of an adverse judgment, and elected not to appear at trial. *Id.* at 482. The court stated:

> Once an issue has been properly framed and put at issue in prior litigation, issue preclusion is applicable even if the litigation was one-sided. In such circumstances, there is an expectation by the parties that the issue will be decided, and the subsequent court is not in a position to evaluate a party's litigation strategy in another case. Further, it would be unfair to permit a party to avoid the preclusive effect of an anticipated adverse decision merely by not appearing for trial or by not having a factual defense to present.

*Id.* at 480.

In this case, after the order of default was entered, Debtor filed an answer to the complaint and a motion to vacate the order of default. A hearing on Debtor's motion was scheduled, and Debtor appeared in court with counsel who argued the motion. When Debtor was unable to meet the conditions imposed by the court for vacating the default, a hearing was scheduled to determine damages prior to entry of judgment. Debtor appeared, with counsel, at the first day of the damages hearing. Debtor did not appear when the damages hearing resumed in March, 1999. There is no dispute, however, that Debtor had notice of the proceedings. Debtor contends that he did not appear because his counsel had withdrawn from the case and he could not afford new counsel,[6] he had difficulty speaking and understanding English, and did not think that any issue affecting the

---

**6.** Debtor was represented by bankruptcy counsel, who consented to the order lifting

the stay, when the damages hearing resumed.

dischargeability of Associates' claim would be involved in the damages hearing.

The record indicates that the Magistrate Judge heard testimony from several witnesses at the hearing, and even questioned some of the witnesses. After the hearing, the Magistrate Judge made detailed findings of fact and conclusions of law in a Report and Recommendation to the district court, which was sent to Debtor. Debtor did not file objections to the Report and Recommendation.

Based on these facts, the court finds that the issue of willful and malicious injury was actually litigated. Debtor had a full and fair opportunity in the district court action to litigate this issue. *See Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (collateral estoppel will bar relitigation of an issue previously decided if the party against whom the decision was rendered had a "full and fair opportunity" to litigate that issue in the prior case). Debtor also had every incentive to appear and litigate the issue of damages when the hearing resumed in March, 1999. Debtor knew that Associates had filed a complaint in the bankruptcy court to determine the dischargeability of the district court judgment, and thus it was foreseeable that the issues determined at the damages hearing could have adverse consequences in his bankruptcy case. Debtor's argument that he did not think the punitive damages issue would be litigated in the district court is unpersuasive given the clear and unambiguous language of the consent order lifting the stay, which was signed by Debtor's bankruptcy counsel and indicated that all issues affecting the amount of Debtor's liability to Associates would be decided at the damages hearing. Debtor's decision not to appear

at the damages hearing did not preclude application of collateral estoppel by the bankruptcy court.[7]

## 2. The District Court's Determination that Debtor's Conduct was Willful and Malicious was Necessary to the District Court Judgment

■■■ Debtor argues that the district court's finding of willful and malicious conduct by Debtor was not necessary to the prior judgment because that finding was not necessary to the determination of compensatory damages. This argument obviously assumes that the issue of punitive damages was not properly before the district court. The court, however, has determined that it was, and Debtor does not dispute that it was necessary to determine his conduct was willful and malicious within the meaning of § 523(a)(6) to assess punitive damages against him under Maryland law.

■■■ For the district court to award punitive damages in the prior action, it was required to find that Debtor acted with actual malice. *K & K Mgmt., Inc. v. Lee,* 316 Md. 137, 175, 557 A.2d 965, 983–84 (1989). Actual malice is characterized as "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Id.* Under § 523(a)(6), willful injury means a deliberate or intentional injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Malice means "wrongful and without cause or excuse." *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1008 (4th Cir.1985). Thus, un-

---

7. Debtor's argument that this case is controlled by *M & M Transmissions, Inc. v. Raynor (In re Raynor),* 922 F.2d 1146 (4th Cir. 1991), is unpersuasive. *Raynor* involved a default judgment on a claim for fraud entered after debtor failed to appear at trial. The court held that the issue of debtor's fraud was not actually litigated because debtor failed to answer or formally appear in the prior state

court action and did not have notice of the trial. In addition, the court found that the state court had misallocated the burden of proof. The court also expressed concern with the state court's findings of fact and conclusions of law in support of the judgment because they were prepared by plaintiff's counsel. *Raynor* is so factually distinct from this case it is inapposite.

der § 523(a)(6), a plaintiff must prove the debtor committed a wrongful act without cause or excuse and with the intent to cause injury. The findings necessary to award punitive damages under Maryland law are virtually identical to those required for the exception to discharge under § 523(a)(6). Therefore, in awarding punitive damages under Maryland law, it was necessary for the district court to find that Debtor caused willful and malicious injury within the meaning of § 523(a)(6).

3. *The Bankruptcy Court Exercised "Particular Care" in Determining that the Issue of Willful and Malicious Injury was Actually and Necessarily Litigated*

The determination that an issue was actually litigated and necessary to the judgment must be made with "particular care." *Combs v. Richardson*, 838 F.2d 112, 113 (4th Cir.1988). Debtor, citing *In re Ross*, 602 F.2d 604, 608 (3d Cir.1979), contends that this requires the bankruptcy judge making the collateral estoppel determination to, in every instance, review carefully the record of the prior case, hold a hearing at which the parties have the opportunity to offer evidence, and make findings of fact and conclusions of law. The Fourth Circuit, however, has never held that these procedures must be followed before a bankruptcy court can apply collateral estoppel in a dischargeability proceeding.

In *Combs*, the particular care requirement was satisfied by reviewing the jury instructions and verdict in the prior action, without reviewing the entire record and without holding an evidentiary hearing. The court noted:

> While in many instances an examination of the full record and transcript of the earlier proceeding may be necessary to determine whether the prerequisites of preclusion ... are satisfied, we do not require that bankruptcy courts invari-

ably take extrinsic evidence before a prior civil judgment may be assigned preclusive effect. We do hold that a jury's finding that a defendant's actions were willful and malicious will collaterally estop the judgment debtor from relitigating that issue in a discharge proceeding only if an examination of the record of the earlier proceeding satisfies the bankruptcy court that the issue was raised and litigated and that the resolution of the issue was necessary to the verdict in the prior case.

*Id.* at 114. A review of the full record was not required in *Combs* because "the jury instructions and verdict in the earlier tort action clearly demonstrate[d] that the willful and malicious nature of defendant Combs' actions was actually and necessarily litigated." *Id.* at 113. Thus, there is no prescribed set of procedures that must be employed by the bankruptcy court in every case, as suggested in *Ross*. Rather, the bankruptcy court need only review the record of the earlier proceeding to the extent necessary to satisfy itself that the issue was raised and litigated and that resolution of the issue was necessary to the prior judgment. *Combs*, 838 F.2d at 114.

Here, the bankruptcy court held a hearing at which the parties presented argument on the preclusion issue. The bankruptcy court had before it the detailed findings of fact and conclusions of law contained in the Report and Recommendation of the Magistrate Judge, as well as portions of the transcript from the damages hearing. Relying primarily on the Report and Recommendation, the Bankruptcy Judge ruled that Debtor was precluded from relitigating the issue of willful and malicious injury under § 523(a)(6).[8] The Magistrate Judge's report amply demonstrates that this issue was actually and necessarily litigated in the district court, and the Bankruptcy Judge did not need to look beyond this report to be satisfied that

---

**8.** The Bankruptcy Judge made findings of fact and conclusions of law in the Order granting

Associates' motion for partial summary judgment.

the requirements of collateral estoppel were met. The court therefore finds that the procedures employed by the bankruptcy court in deciding the preclusion issue satisfied the *Combs* "particular care" requirement.

### C. *Debtor's Due Process Rights*

Having found the bankruptcy court exercised "particular care" in determining that the issue of willful and malicious injury was actually and necessarily litigated, the court also finds that Debtor's due process rights were not impaired.

### III. *Conclusion*

For the foregoing reasons, the court finds that the bankruptcy court properly applied the doctrine of collateral estoppel to preclude Debtor from relitigating the issue of willful and malicious injury under 11 U.S.C. § 523(a)(6). Accordingly, the court shall AFFIRM the Order of the bankruptcy court.